IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MARIA CRUZ BARAJAS,<br>Plaintiff, | § § § § | |
| v. | § § | Civil Action No. 4:23-cv-518 |
| TYSON FOODS, INC.<br>Defendant. | § § § § | |

## ORIGINAL COMPLAINT AND JURY DEMAND

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Maria Cruz Barajas, hereinafter called Plaintiff, complaining of and about D.R. Horton, Inc., hereinafter called Defendant, and for cause of action shows unto the Court the following:

### PARTIES AND SERVICE

1.  Plaintiff, Maria Cruz Barajas, is a citizen of the United States and the State of Texas and resides in Tarrant County, Texas.

2.  Defendant, Tyson Foods, Inc., is a foreign for-profit corporation and has an office, place of business, or agency for transacting business in the State of Texas. Service of process pursuant to Section 17.021 of the Texas Civil Practice and Remedies Code may be effected by serving its registered agent CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. *Issuance of Summons is hereby requested.*

### JURISDICTION

3.  The action arises under 42 U.S.C. Section 1983 et. seq. as hereinafter more fully appears.

4.  This Court has supplemental jurisdiction over state law claims discussed below

under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

## NATURE OF ACTION

5. This is an action under 29 U.S.C. Section 2601 et. seq. to correct violations of the Family Medical Leave Act.

## CONDITIONS PRECEDENT

6. All conditions precedent to jurisdiction have occurred or been complied with: Plaintiff has been employed for at least 12 months by Tyson Foods, Inc., and has worked at least 1,250 hours for Tyson Foods, Inc. in the last 12-month period. Further, a charge of discrimination was filed with the Equal Opportunity Commission within three hundred days of the acts complained of herein and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Opportunity Commissions' issuance of a right to sue letter.

7. Additionally, this lawsuit was commenced within two (2) years of the date of the last event of Defendant's FMLA violations occurred.

## FACTS

8. Plaintiff began her employment with Tyson Foods in October 1994. Her position was as a kitchen lead at the Haltom City plant. Plaintiff would routinely work over 50 hours a week. Plaintiff was never written up, warned, or reprimanded for any reason relating to her work performance and job duties.

9. Defendant utilizes a point system for absences. Once an employee accumulates a total of six points, they are then terminated. Plaintiff was unaware of this policy during her employment.

10. On or about January 2020, Plaintiff was diagnosed with cervical and lumbar segmental dysfunction with associated myalgia, muscle spasms and underlying soft tissue trauma.

Plaintiff sustained these injuries on the job from repeatedly lifting heavy objects over the course of many years. Further, Plaintiff is a long-time sufferer of diabetes.

11. Plaintiff was under the care of Dr. Gideon Traweek, DC. These medical conditions resulted in Plaintiff suffering from pain, inflammation of tissue (painful to touch), reduced range of motion, muscle tension, numbness and weakness. Plaintiff's diagnosed disabilities impacted her everyday life in that she suffers from arthritis, cannot sweep and mop or otherwise clean her home in the manner she is accustomed to, cannot lift anything over 30 pounds, cannot work long hours, and trouble with pain and muscle stiffness.

12. During the course of Plaintiff's employment with Tyson, she was hospitalized for a week at a time on four different occasions. Each time she was hospitalized, the plant's nurse would require Plaintiff to go to the hospital for treatment due to her obvious symptoms and condition.

13. Each time Plaintiff was hospitalized as a result of her diabetes, and at the behest of Defendant, she was docked one-half of a point. This resulted in a total of two points for absenteeism.

14. On or about March 4, 2020, the SARS-CoV-2 (Covid-19) strain arrived in Texas. On March 10, 2020, the first two presumptive positive cases of Covid-19 were reported in the greater Dallas-Fort Worth Metroplex area.

15. Defendant employed approximately 116,000 individuals across its meat plants and warehouses when the Covid-19 pandemic began in early 2020[1].

16. On May 7, 2020, Plaintiff began experiencing symptoms consistent with the Covid-19 virus, including nausea, vomiting, and fever. Defendant immediately requested Plaintiff leave

---

[1] See Tyson's Form 10-Q SEC filing for period ending March 28, 2020

the plant and get tested for the virus before returning to work. In an abundance of caution, Defendant did not allow Plaintiff to retrieve her personal effects and had a fellow employee deliver Plaintiff's personal effects to her in the parking lot.

17. As a result of Plaintiff's diabetes, she was at a substantially higher risk for severe illness and complications from Covid-19 than her non-diabetic counterparts.

18. On May 11, 2020, Plaintiff submitted a doctor's note to Defendant, via email, indicating that she had been under the care of Julio Valdes-Salinas, MD since May 7, 2020 and that she could return to work on May 21, 2020 and would further be unavailable to return to work until a negative result was obtained.

19. On July 17, 2020, Dr. Traweek provided Plaintiff with a doctor's note indicating he was her treating physician for the cervical and lumbar segmental dysfunction. Dr. Traweek further indicated that Plaintiff's medical conditions currently prevented her from performing necessary job functions and request she be placed on light duty, i.e. working no more than 40 hours a week and reduce her lifting requirements to no mor than 15 pounds until further notice so as to prevent exacerbation of her disability.

20. In response to Plaintiff's request for reasonable accommodation, Defendant would allow Defendant to have Saturdays off. This change in schedule did not provide time for Defendant to see her physician for therapy and follow-up appointments and as a result, each time Defendant needed to miss work for a medically necessary doctor's appointment, she accumulated a "point".

21. Thereafter, Defendant began retaliating against Defendant on the basis of her disability by assigning Defendant "points" for her medically necessary absences.

22. Plaintiff applied for short term disability in September 2020. On September 21, 2020, that short term disability request was approved for September 14, 2020 through September 23, 2020.

23. On October 9, 2020, Plaintiff again visited a medical care facility due to experiencing symptoms associated with Covid-19. Kathleen Durham Daigle, PA-C provided Plaintiff with a doctor's note indicating she could return to work on October 13, 2020. Plaintiff then provided Defendant with a copy of same via email on October 11, 2020.

24. On October 13, 2020, when Plaintiff returned to work, Defendant requested her access card and terminated her employment citing that she had incurred a total of six points for absenteeism as a result of her documented disabilities of diabetes, cervical and lumbar segmental dysfunction.

## DISCRIMINATION BASED ON DISABILITY

25. Plaintiff incorporates all preceding paragraphs herein.

26. Disability discrimination occurs when an employer or entity covered by the American with Disabilities Act ("ADA") treats a qualified individual who is an employee unfavorably because he has a disability. To state a claim for disability discrimination under the ADA, a plaintiff must show: "(1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability." *Moss v. Harris County Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017).

27. A disability is "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 222 (5th Cir. 2011) (quoting 29 C.F.R. § 1630.2(g)). Although having a substantially limiting impairment "is not meant to be a demanding standard[,] . . . not every impairment will constitute

a disability within the meaning of [the ADA]." 29 C.F.R. §1630.2(j)(1)(ii). Indeed, even under the 2008 amendments to the ADA, a physical or mental impairment is a disability only if it "'substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.'" *Estes v. Town*, 2018 WL 1157787, *2 (N.D. Tex. Feb. 7, 2018) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)) (emphasis added); *Walter v. Birdville Indep. Sch. Dist.*, 2018 WL 3974714, *3 (N.D. Tex. Aug. 20, 2018) (same); *Williams v. City of Richardson*, 2017 WL 4404461, *7 (N.D. Tex. Sept. 8, 2017) (same), *report and recommendation adopted*, WL 4351535 (N.D. Tex. Sept. 30, 2017).

28. Here, Plaintiff is an individual with diabetes, arthritis, and cervical and lumbar segmental dysfunction. Plaintiff sustained arthritis, and the cervical and lumbar segmental dysfunction as a result of the repetitive manual labor required by her job at Defendant's plant.

29. As a result of Plaintiff's disabilities, she struggles with daily living activities, i.e., Plaintiff cannot not lift or carry anything heavy, cannot sweep or mop her residence, high/low blood sugar, and easily tired. In accordance with the standards promulgated by the Americans with Disabilities Act, Plaintiff did/does have a disability.

30. Plaintiff was hired by Defendant in October 1994 and worked for Defendant for over thirty years with zero complaints regarding Plaintiff's work performance. Accordingly, Plaintiff was qualified for her position.

31. Defendant discriminated against Plaintiff due to her diabetes. Plaintiff was hospitalized several times due to her diabetes. When experiencing a diabetic episode while at work, which would often occur due to Plaintiff's grueling schedule, the plant nurse would direct Plaintiff to seek emergent hospital care. In turn, Defendant would then assign Plaintiff points, in the form a disciplinary measure, due to missing time from Plant. This unfounded disciplinary measure is a

source of discrimination against Plaintiff as a direct result of her disability, e.g. diabetes.

32. Defendant further discriminated against Plaintiff due her cervical and lumbar segmental dysfunction diagnoses and subsequent request for a reasonable accommodation regarding her neck injuries.

33. Plaintiff sustained said disabilities during her thirty plus year tenure with Defendant working in a repetitious manner, including frequent and heavy lifting. After receiving the diagnoses and upon direction from her treating physician, Plaintiff requested Defendant reduce her work hours from over 50 to 40 and limit her lifting to no more than 15 pounds. Plaintiff's treatment would also necessitate therapeutic treatments and follow up appointments with her doctors. In response to the request for accommodation, Defendant allowed Plaintiff to have Saturdays off. This did not provide for Plaintiff to make her medically necessary appointments during non-work hours therefore causing Plaintiff to miss additional time from the plant. As a result, Defendant discriminated against her by, again, assigning Plaintiff disciplinary points. This unfounded disciplinary measure is a source of discrimination against Plaintiff as a direct result of her disability, e.g. cervical and lumbar segmental dysfunction.

34. Plaintiff was unfairly targeted due to her disabilities and discriminated against in the form of undue disciplinary action which resulted in Plaintiff's wrongful termination. Defendant's actions clearly demonstrate discriminatory conduct toward Plaintiff because of her disability. Absent Plaintiff's disabilities, Defendant did not have any problems with Plaintiff's conduct or work performance.

## WRONGFUL TERMINATION UNDER ADA

35. Plaintiff incorporates all preceding paragraphs herein.

36. Disability discrimination occurs when an employer or entity covered by the American with Disabilities Act ("ADA") treats a qualified individual who is an employee unfavorably because he has a disability. In order to state a claim for disability discrimination under the ADA, a plaintiff must demonstrate "that (a) he has a disability; (b) he is a qualified individual for the job in question; and (c) an adverse employment decision was made because of his disability." *Mercer v. Arbor E & T,* No. 4:11–CV–3600, 2012 WL 1425133, at *5 (S.D.Tex. Apr.21, 2012) (quoting *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir.1999)) (internal quotation marks omitted).

37. In Texas, employment is at will with several exceptions in both statutory and common law. State and federal discrimination statutes prevent termination based upon a person's race, color, religion, gender, age, national origin, disability, or citizenship. An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer: (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee. Tex. Labor Code § 21.051. Employees are protected when requesting reasonable accommodations for a disability.

38. Plaintiff is a member of a protected class based on her disability. Here, Plaintiff is an individual with diabetes, arthritis, and cervical and lumbar segmental dysfunction. Plaintiff sustained arthritis, and the cervical and lumbar segmental dysfunction as a result of the repetitive manual labor required by her job at Defendant's plant.

39. As a result of Plaintiff's disabilities, she struggles with daily living activities, i.e., Plaintiff cannot not lift or carry anything heavy, cannot sweep or mop her residence, high/low blood sugar, and easily tired. In accordance with the standards promulgated by the Americans with Disabilities Act, Plaintiff did/does have a disability.

40. Plaintiff worked for Defendant for over thirty years without incident. Plaintiff was qualified for her job. Plaintiff had never received any warnings, write-ups or reprimands concerning her work performance.

41. Plaintiff experienced an adverse employment action when she was improperly terminated for accumulating too many disciplinary points as a result of being hospitalized, medically necessary absences from work.

## WRONGFUL TERMINATION UNDER THE FAMILIES FIRST CORONAVIRUS RESPONSE ACT

42. Plaintiff incorporates all preceding paragraphs herein.

43. Wrongful termination under the Families First Coronavirus Response Act occurs when an employer violates 29 USC 2601, Section 5102. *See 29 USC 2601, Section 5105.* An employer shall provide to each employee employed by the employer paid sick time to the extend that the employee is unable to work due to a need for leave because…. (1) The employee is subject to a Federal State of local quarantine or isolation order related to COVID-19; (2) The employee has been advised by a health care provider to self-quarantine due to concerns related to COVID-19; (3) The employee is experiencing symptoms of COVID-19 and seeking a medical diagnosis; …; or (6) the employee is experiencing any other substantially similar conditions specified by the Secretary of Health and Human Services in consultation with the Secretary of Treasury and Secretary of Labor…*Id*. at 5102(a)(1)-(6). If one of the conditions is met., an employee shall be entitled to paid sick time for an amount of hours determined under paragraph (2). *Id*. at 5102(b)(1).

44. Here, Plaintiff would qualify under (3) of the *29 USC 2601, Section 5102*. Plaintiff was experiencing symptoms of COVID-19, including nausea and vomiting. Defendant even requested Plaintiff leave the plant and obtain a negative covid-19 test result before returning to work.

45. As a result of missing time due to federally mandated covid-19 protocols, Plaintiff incurred several disciplinary points which resulted in her wrongful termination.

46. Plaintiff was exhibiting symptoms of COVID-19 and sought medical diagnosis and treatment. It was especially important that Plaintiff receive proper medical care due to her diabetes which would put her at a substantially higher risk for severe illness and complications from Covid.

47. Defendant, while knowing the extent of Plaintiff's diabetes, and knowing that Plaintiff was exhibiting COVID-19 symptoms, instead of following the law and allowing Plaintiff to obtain medically necessary treatment without detriment, disciplined Plaintiff and ultimately wrongfully terminated Plaintiff.

## RESPONDEAT SUPERIOR AND RATIFICATION

48. Whenever in this complaint it is alleged that the Defendant, did any act or thing, it is meant that the Defendant's officers, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendant or was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees, or representatives.

## RETALIATION

49. Plaintiff incorporates all preceding paragraphs herein as if set forth at length.

50. To establish a prima facie case of retaliation under Title VII of the Civil Rights Act of 1964, a plaintiff must show that (1) she participated in an activity protected under the statute;

(2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (Title VII); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999) (ADA).

51. Defendant committed unlawful employment practices against Plaintiff because Plaintiff was engaged in activity protected under the Title VII, to wit: requesting reasonable accommodation as it related to her disabilities; this request was substantiated and supported by documentation from a treating physician. In turn, Defendant orchestrated a campaign of deceit and other unlawful practices designed to harass Plaintiff for exercising her rights under the color of law.

52. The effect of engaging in this protected activity drew the ire of Plaintiff's colleagues and Defendant which operated to deprive Plaintiff of equal opportunities, and otherwise adversely affect her status as an employee. Plaintiff alleges that Defendant, instituted a campaign of retaliation which included increased scrutiny and improper disciplinary action due solely to missing work as medically necessary or otherwise mandated by federal protocol.

53. Plaintiff shows that the retaliatory actions taken against her were motivated by Plaintiff's disabilities and Covid-19 symptoms. Plaintiff further alleges that the retaliation was committed with malice or with reckless indifference to the state and federally protected rights of Plaintiff.

54. Plaintiff suffered damages for which Plaintiff herein sues.

## DAMAGES

55. Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

a. All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

b. Back pay from the date that Plaintiff was denied equal pay for equal work and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

c. All reasonable and necessary costs incurred in pursuit of this suit;

d. Expert fees as the Court deems appropriate;

e. Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

f. Inconvenience;

g. Interest;

h. Loss of benefits;

i. Humiliation; and

j. Injury to reputation.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Maria Cruz Barajas, respectfully prays that the Defendant Tyson Foods, Inc. be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court; together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**

    Respectfully submitted,

    /s/ Ali Crocker Russell
    Ali Crocker Russell

State Bar No: 24098868
Email: ali@cralawfirm.com
CROCKER RUSSELL & ASSOCIATES
2401 Callender Road, Suite 103
Mansfield, TX 76063
Office: (817) 482-6570
Fax: (682) 232-1850
**ATTORNEY FOR PLAINTIFF**